Heather B. Dillion (SBN 292156)
dillion.heather@dorsey.com
Pavlina K. Rafter (SBN 304181)
rafter.pavlina@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone:  (714) 800-1400
Facsimile:   (714) 800-1499

Melissa Raphan (*Pro Hac Vice Pending*)
raphan.melissa@dorsey.com
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Defendants
CANON SOLUTIONS AMERICA, INC.
ROBB GONKA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KEITH MCCABE, an individual,<br><br>          Plaintiff,<br><br>v.<br><br><br>CANON SOLUTIONS AMERICA, INC., a New York corporation and ROBB GONKA, an individual; and DOES 1 through 10, inclusive,<br><br><br><br>          Defendants. | CASE NO:<br><br>[Orange County Superior Court Case No. 30-2022-01281076-CU-OE-CJC]<br><br>**NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY) [28 U.S.C. §§ 1332 AND 1441(b)]**<br><br>[Filed Concurrently With Civil Case Cover Sheet; Declaration of Kevin Coleman; Declaration of Pavlina Rafter; Corporate Disclosure Statement; and Certificate of Interested Parties]<br><br>Complaint Filed: September 15, 2022<br>Trial Date:  Not Set |

**TO THE CLERK OF THE ABOVE ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant CANON SOLUTIONS AMERICA, INC. ("CSA"), hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332(a),  1441(a) and (b), and 1446 based on diversity of citizenship jurisdiction and because Defendants have learned based on an "other paper" that Plaintiff's causes of action against the Individual Defendant Robb Gonka ("Gonka") are untimely and/or do not meet the definition of harassment, and removes this action from state court to federal court based on fraudulent joinder.  Removal is proper on the following grounds:

1.     On September 15, 2022, Plaintiff Keith McCabe ("Plaintiff" and/or "McCabe") filed a civil action in the Superior Court, State of California for the County of Orange, entitled *Keith McCabe vs. Canon Solutions America, Inc., a New York Corporation; and Robb Gonka, an individual; and DOES 1 through 50*, Case No. 30-2022-01281076-CU-OE-CJC (the "Complaint" or "State Court Action").

2.     On September 28, 2022, Plaintiff served CSA, a New York corporation, through CSC-Lawyers Incorporating Services with the Summons, Complaint, Civil Case Cover Sheet and ADR Information Package.  *See* Declaration of Pavlina Rafter ("Rafter Decl.") ¶ 2, Exhibits A, B.  Individual Gonka was served by Waiver of Service of Summons on November 22, 2022.  [Dkt. 16]; Rafter Decl. ¶ 3.

3.     On October 29, CSA filed its first Notice of Removal. [Dkt. 1.] Plaintiff filed his Motion to Remand on November 16, 2022.  [Dkt. 13.]  This Court remanded the case to state court on January 24, 2023.  [Dkt. 27.]; Rafter Decl.  ¶ 4.

4.     On February 22, 2023, Plaintiff served Defendants with his First Amended Complaint ("FAC").  Rafter Decl. ¶ 5, Exhibit F.  On March 28, 2023, Defendants filed a Demurrer to Plaintiff's FAC, demurring to Plaintiff's Second, Seventeenth and Eighteenth Causes of Action for harassment, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").  Rafter Decl. ¶ 5.  On July 14, 2023, the State Court sustained Defendants'

-1-

demurrer to the FAC, ruling in part that the harassment Cause of Action:

> "appears barred by the applicable statute of limitations and on the grounds that the FAC fails to adequately allege facts as to the elements of plaintiff's protected status was a substantial motivating factor for the harassment, this conduct was unwelcome and sufficiently severe or pervasive that it had the purpose or effect of altering the conditions of plaintiff's employment and creating an intimidating, hostile, abusive, or offensive working environment, the environment created by the conduct would have been perceived as intimidating, hostile, abusive, or offensive by a reasonable person in the same position as the plaintiff."

The Demurrer to the Seventeenth and Eighteenth Causes of Action was sustained on the grounds that the FAC failed to "adequately allege facts as to the elements of extreme and outrageous conduct by defendant." Rafter Decl. ¶ 6, Exhibit G.

5. On July 19, 2023, Plaintiff served CSA and Gonka with his Second Amended Complaint (the "SAC"). Defendants filed their Answer to the SAC in the State Court Action on August 22, 2023. Rafter Decl. ¶ 7. Exhibits H, I.

6. The SAC asserts eighteen causes of action against CSA but only three against Gonka: the Second Cause of Action for Harassment Fair Employment and Housing Act; the Seventeenth Cause of Action for Intentional Infliction of Emotional Distress; and the Eighteenth Cause of Action for Negligent Infliction of Emotional Distress.

7. Plaintiff was deposed on August 29, 2023 and Defendants received Volume I of his deposition transcript on September 1, 2023. Plaintiff's continued deposition took place on September 12, 2023. Rafter Decl. ¶¶ 8-9.

## I. REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

### A. Complete Diversity Exists

8. Complete diversity exists between Plaintiff and CSA.

#### 1. Citizenship of Plaintiff

9. In analyzing diversity jurisdiction, courts looks to an individual's

-2-

citizenship at the time the lawsuit was filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

10. Plaintiff alleges that he, at all times, "was, a resident of Orange County, California" and that he was "at all times relevant" to this action "employed by Defendants in the County of Orange, CA." SAC. ¶ 3, 6-7; *see also* Declaration of Kevin Coleman ("Coleman Decl.") ¶¶ 6-8. Accordingly, Plaintiff is a citizen of California for purposes of determining diversity. *See* 28 U.S.C. § 1332(a).

**2. Citizenship of Defendant Canon Solutions America, Inc.**

11. Plaintiff alleges that "Defendant Canon Solutions America, Inc. is a corporation organized under the laws of the State of California." SAC ¶ 4.

12. "A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

13. During all relevant times, CSA has been incorporated in New York, is headquartered and has its principal place of business in New York. *See* Coleman Decl. ¶ 4. For diversity purposes, CSA is a citizen of New York, and not California.

14. CSA's principal place of business is New York under the "nerve center test."[1] *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (adopting "nerve center" test for establishing principal place of business). "In an effort to find a single, more uniform

---

[1] The "nerve center" test is generally utilized when a corporation's activities are conducted in many states. *See Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F. Supp. 405, 412 (N.D. Cal. 1970). Defendant conducts business and widely operates throughout the United States. *See* Coleman Decl., ¶ 5. Therefore, the nerve center test is most appropriate. *See id.* In any event, given that Defendant's central functions are concentrated in New York, the "place of operations" for Defendant is also in New York. *See Tosco Corp. v. Communities for a Better Environment,* 236 F.3d 495, 497 (9th Cir. 2001).

-3-

interpretation" of "principal place of business," the U.S. Supreme Court held in *Hertz Corp. v. Friend*, that "principal place of business" is "best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." Relevant considerations under the "nerve center" test include: (1) where the executives have their offices; (2) where the administrative and financial offices are located and the records kept; (3) where the corporate income tax return is filed; (4) where the "home office" is located; and (5) where day-to-day control of the business is exercised. *See Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal 1964).

15.    CSA meets the above articulated test. CSA's "home office," where almost all its top executives work, direct, control, and coordinate CSA's business activities, is located in New York. See Coleman Decl. ¶ 4. CSA files corporate income tax returns in New York, and maintains corporate records in New York. *Id.*

### 3.    Defendant Gonka is a Citizen of California

16.    "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). Improperly named Robb Gonka ("Gonka") is a citizen of California, and at all times relevant was a resident of, and domiciled in, California. SAC ¶ 5. A review of Gonka's personnel file reveals that he resides in California. Coleman Decl., ¶ 10. Thus, Gonka is a resident of the State of California for diversity purposes.

### 4.    The Doe Defendants

17.    CSA is not aware that any other Doe Defendants have been served with a copy of the Summons and Complaint or that any have been named as a party. *See* Rafter Decl. ¶ 3. In any event, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1); *see also McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

-4-

### 5. Fraudulent Joinder of Gonka Cannot Defeat Diversity Jurisdiction and His Citizenship is to be Disregarded

18. As stated *supra*, at the time the State Court Action commenced, and at the time of removal, Gonka was and is a California resident. SAC ¶ 5; Coleman Decl., ¶ 10.

19. The citizenship of Gonka must be disregarded for purposes of diversity because he has been fraudulently joined in an attempt to defeat diversity jurisdiction. Gonka cannot be found liable as a matter of law where the sole claim against him is outside the statute of limitations and the allegations cannot support a harassment claim under California law. "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (1987)).

20. The fraudulent joinder standard contains an implicit requirement of reasonableness –the standard does not allow a remote, speculative, or hypothetical possibility of recovery to defeat complete diversity. *TPS Utilicom Servs., Inc. v. AT&T Corp.,* 223 F. Supp. 2d 1089 (C. D. Cal. 2002). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

### a. Plaintiff's Testimony Confirms That The Alleged Harassment Occurred Outside the Statute of Limitations and Any Actions Thereafter Are Not Harassment as a Matter of Law

21. The three causes of action against Gonka: harassment, IIED, and NIED are time-barred. The statute of limitations for harassment claims is three (3) years after the alleged unlawful action occurred. Cal. Gov. Code §12960(e). Plaintiff alleges the following in support of his harassment claim:

-5-

- SAC ¶ 25: "In or around April 11, 2017 [("the 2017 Complaint")], Plaintiff raised a complaint to Human Resources of sexual harassment by his Manager, Robb Gonka ("Gonka"). This complaint stemmed from Gonka's inappropriate touching and sexual comments. Specifically, Plaintiff complained that Gonka placed his hands on Plaintiff's "shoulders, back, neck" to be "prodded, pinched or poked." Plaintiff alleged that he made Gonka aware that his conduct made Plaintiff uncomfortable, but Gonka continued to engage it in anyway. Plaintiff further complained that Gonka would refer to him as "honey" or "sexy", to which Plaintiff would reply: "my name is Keith." Plaintiff's complaint to Human Resources also included allegations that Gonka would constantly reference "strippers, hookers, open strip clubs and pole dancing".

- SAC ¶ 26: "In response to Plaintiff's [2017] complaint, Human Resources said that they would conduct an investigation, but Plaintiff was never informed of the results of any purported investigation. As a result of Human Resources failure to act, Gonka's inappropriate and harassing behavior continued."

22.    Plaintiff's Complaint includes reference to complaints against Gonka by another former employee, Ryan Bent, not a party to this lawsuit.  Plaintiff's allegations include that Gonka "would make other unwelcome comments such as 'its just us girls here' when referring to his all-male team.  Plaintiff and Mr. Bent found this not only inappropriate but also demeaning and discouraging."  Complaint ¶29.

23.    Though not included in his prior two complaints, Plaintiff also added the following allegations in his operative Complaint:

- SAC ¶ 29: "Additionally Mr. Bent complained that Gonka would suggest that his male employees, almost all of whom were married, should 'take one for the team' and have sexual relations with female customers to close deals."

- SAC ¶ 31. "This behavior continued and throughout Plaintiff's employment Gonka continued to show bias personal and sexual bias against Plaintiff in the workplace. Gonka would still address Plaintiff as "sexy" or "big sexy" and

-6-

nothing was done to prevent that behavior. Though Plaintiff complained to Gonka, this only resulted in more discrimination and retaliation by Gonka."

- SAC ¶ 36. "As late as 2020 Gonka would provide video clips in team meetings that were sexual and disturbing in nature. The videos were inappropriate and puzzling to Plaintiff and his team in a business setting. Despite the complaints about Gonka and the videos, Gonka continued to show them."

24. Thereafter, Plaintiff alleges that "following the complaints of harassment by Gonka, Gonka began to retaliate against Plaintiff and single him out for disparate treatment." SAC ¶ 33. There are no additional allegations of sexual harassment—or any harassment—in the remainder of Plaintiff's Complaint. The alleged harassment by Gonka that Plaintiff complained of in April 2017 occurred approximately five (5) years and five (5) months before Plaintiff filed his administrative complaint with the DFEH on September 14, 2022 — well outside the three-year statute of limitations. *See* SAC, Exhibit 1.

25. Further, contrary to the newly added allegations in his SAC that "[t]his behavior continued and throughout Plaintiff's employment" or that Gonka allegedly showed "sexual and disturbing" video clips "[a]s late as 2020," Plaintiff admitted during his deposition that none of the alleged acts of harassment occurred after 2017, and his testimony makes clear that the two alleged incidents in June 2022 cannot constitute harassment as a matter of law. Specifically, Plaintiff testified that:

- Gonka "rarely" met with Plaintiff or accompanied Plaintiff on sales calls [Rafter Decl. ¶ 9, Exhibit J at pp. 124:21-125:5; 128:22-129:23];

- Gonka only held in-person sales team meetings quarterly in 2018 and 2019; he did not believe there were any meetings in 2020, and he "had no memory of any meetings in 2021." [Rafter Decl. ¶ 9, Exhibit J at pp. 136:16—138:13];

- The single incident of alleged "sexual harassment" that allegedly occurred after 2017 occurred in June 2022 at a training meeting (June 14-15): Plaintiff testified that Gonka placed his right hand on McCabe's left shoulder for "one

-7-

second" and then removed it during a sales team training meeting in Chicago.  Plaintiff testified that "because of the history" he felt it was "in your face" offensive.  [Rafter Decl. ¶ 9, Exhibit J at pp. 137:17- 145:22];

- Plaintiff did not report the one second shoulder touch to Gonka or to CSA's human resources or to CSA's anonymous hotline because it was a "one-second occasion that, you know, in which it happened and that it was a minor offense." [Rafter Decl. ¶ 9, Exhibit J at pp. 144:20-145:22];

- Plaintiff  admits that he does not recall Gonka touching him any other time from 2018-2022 [Rafter Decl. ¶ 9, Exhibit J at pp. 148:1-14];

- Plaintiff testified that during the training meeting in June 2022, a group from his sales team, including Gonka, attended a dinner and were seated at a long table.  Plaintiff did not know who said it or who "raised the topic," he heard a discussion that some senior manager got in trouble for an incident involving a strip club; it was a "historical conversation" about "a senior manager being in trouble with the company for partaking in some type of strip club participation several years ago." He recalls people "giggling and laughing" in response.  He believes that Gonka "was involved in the conversation" but could not recall what Gonka actually said, if anything.  Plaintiff was unable to provide any further specifics on the alleged discussion but testified that it was "one statement" and he knew the comments were not directed at him [Rafter Decl. ¶ 9, Exhibit J at pp. 145:4-146:2; 148:15-155:8];  Plaintiff does not recall Gonka being engaged in discussions of "strippers, hookers, opening strip clubs or pole dancing" after 2017 except for this alleged June 2022 conversation. [*Id.* at pp. 215:9-216:14];

- Plaintiff does not recall discussions of "take one for the team" or being called "honey" or "sexy" after 2017, though he recalls Gonka started to say, "hon…" one time on an unknown date "but stopped himself."  Plaintiff did not know whether that was directed at him [Rafter Decl. ¶ 9, Exhibit J at pp. 237:7-10;

-8-

213:22-215:8];

- Plaintiff does not recall having to ask for a serial number to obtain Discovery Credit after early 2018 [Rafter Decl. ¶ 9, Exhibit J at pp. 270:2-271:15];

- Plaintiff could not recall a single fact about the alleged videos shown by Gonka, including who was present or the dates the clips were shown, just that they were "movie clips" from movies that Gonka found "motivational" or "interesting for discussion" but in Plaintiff's "opinion" some of them had "sexual content or "sexual connotation" and were inappropriate, while others were just "strange, inappropriate in the sense that it was unprofessional. It did not have anything to do with sales." Plaintiff "looked away" because he "wasn't interested" in them. The alleged video clips lasted from "one to four or five minutes." [Rafter Decl. ¶ 9, Exhibit J at pp. 283:12- 289:11];

- Plaintiff does not recall whether Gonka showed the movie clips before or after COVID, does not recall which movies the clips were from, does not recall any nudity, and could not describe the content other than in his "opinion" that they had a "sexual connotation or was disturbing in nature." [*Id*.];

- Plaintiff never reported any alleged acts of sexual harassment to anyone after 2017. [Rafter Decl. ¶ 9, Exhibit J at p. 290:13-20];

- Plaintiff did not know whether Gonka "harass[ed]" him based on his gender but believes it could have been because Gonka was "jealous" of him. [Rafter Decl. ¶ 9, Exhibit J at pp. 207:1-7; 210:13-211:9]

- Plaintiff admitted that he never suffered "sexual abuse" while employed at CSA—contrary to his allegations in ¶ 234 of the SAC. [Rafter Decl. ¶ 9, Exhibit J at pp. 281:12- 282:16]

26. Plaintiff's deposition testimony triggered a second thirty-day removal period as his testimony can constitute "other paper from which it may first be ascertained that the case is one which is or has become removable" within the meaning of 28 U.S.C. § 1446(b)(3). An "other paper" is defined as a "written or

-9-

printed document or instrument." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) (deposition transcripts constitute "other paper"); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007), *cert. denied*, 553 U.S. 1080 (2008) (other "paper" includes written discovery responses, settlement offers, demand letters, deposition testimony, and correspondence between counsel).  Also see *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886-87 (9th Cir. 2010) ("we agree with the district court that Carvalho's deposition testimony triggered the second thirty-day removal period. . . . [A] plaintiff's response to deposition questions can constitute 'other paper' within the meaning of section 1446(b)[.]"  Accord, *Vieira v. Mentor Worldwide LLC*, 392 F. Supp. 3d 1117, 1128 (C.D. Cal. 2019) (finding defendant fraudulently joined after review of deposition testimony: "After a review of the amended Statement of Information and Mr. Mraz's testimony at deposition, the Court concludes that … NuSil is not a proper defendant in this lawsuit as there is no possibility that Plaintiff could recover under a theory of product liability.")

27. Any "other paper" must make a ground for removal "unequivocally clear and certain" to start the thirty-day removal period under 28 U.S.C. § 1446(b)(3). *Dietrich*, 14 F.4th at 1095.  Plaintiff's deposition testimony makes unequivocally clear and certain that any alleged act of harassment occurred *at the latest* in "early 2018" and was thus outside the statute of limitations period for a harassment claim. Plaintiff's testimony was also unequivocally clear and certain that the only alleged act of touching occurred in June 2022 when Gonka allegedly touched Plaintiff's shoulder for "one second" during a team training and that Plaintiff admitted the touch to be a "minor offense," confirming that this alleged act does not rise to the level of "severe or pervasive" conduct to constitute  harassment[2].

---

[2]   Plaintiff was not certain regarding Gonka's alleged involvement or participation in the June 2022 "historical conversation" about "a senior manager being in trouble with the company for partaking in some type of strip club participation several years ago;" further, Plaintiff clearly testified that he could not hear or recall the conversation clearly, it did not involve him and was not directed at

-10-

28. Though this matter was previously remanded because "a court might *possibly* find that Plaintiff stated a claim under the California Fair Employment and Housing Act" [Dkt. 27], subsequently, the State Court granted Defendants' demurrer to the FAC on the harassment (and IIED and NIED causes of action) and Plaintiff has now testified regarding the alleged acts of harassment, including the *new allegations that appear for the first time in the SAC*. Given the well-settled law in California, it is clear from the face of his pleadings and his deposition testimony that there is no possibility that Plaintiff can state a harassment claim against Gonka. Further, based on Plaintiff's testimony the continuing violations doctrine would not apply to salvage Plaintiff's untimely and insufficient claims.

29. The continuing violation exception only applies if a plaintiff shows: "(1) the actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 802 (2001). Based on his clear deposition testimony, Plaintiff cannot meet these elements, as the alleged acts of harassment stopped after 2017.

### b.    Personnel Management Decisions Are Not Harassment As a Matter of Law

30. The acts of harassment that Plaintiff complains of are ordinary personnel management business decisions: (1) adding to his sales territories, (2) changing his sales quotas, (3) verbal warnings when his sales dipped, and (4) administration of sales promotion periods (which Plaintiff admits were extended to accommodate him). SAC ¶¶ 33, 35, 37-43. "Commonly necessary personnel management actions such as hiring, firing, project assignments, office or work station assignments, promotion or demotion . . . do not come within the meaning of harassment." *Janken v. G.M.*

---

him. Plaintiff also acknowledged that it was just "one statement," which cannot be "severe or pervasive" as a matter of law.

-11-

*Hughes Electronics*, 46 Cal. App. 4th 55, 64-65 (1996).

31. "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken,* 46 Cal. App. 4th at 63. "[C]ommonly necessary personnel management actions such as hiring, firing, project assignments, office or work station assignments, promotion or demotion . . . do not come within the meaning of harassment." *Id.* at 64-65; *Roby v. McKesson Corp*., 47 Cal. 4th 686, 707 (2009). It is the manager's duty to make "job assignments," and executing those duties does not constitute harassment even if the manager acts with the intent to discriminate. *Goodman v. Wal-Mart Stores, Inc*., 2015 AD Cases 380428 (C.D. Cal. 2015*), citing Gonzales v. City of Martinez*, 638 F.Supp.2d 1147, 1154-55, 1162 (N.D. Cal. 2009) (harassment claim failed as a matter of law when a supervisor "increased [plaintiff's] shifts in dispatch despite knowing that dispatch work aggravated [her] injury to her neck and was in violation of her work restrictions" because such conduct constituted "personnel management decisions"). The proper claim to make in such circumstances is against the employer for discrimination. *Id.*

32. However, Gonka cannot be held personally liable for discrimination or retaliation. *Janken*, 46 Cal. 4th 55, 62 (1996) (individual supervisory employees not at risk of personal liability on discrimination claims); *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) ("individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts"); *Saylor v. Yosemite Falls Café, Inc*., 2013 Cal. Super. LEXIS 2404, *10 (sustaining demurrer as to discrimination claim against individual co-workers as "[t]raditionally, there is no supervisorial or individual liability under the FEHA for retaliation or discrimination.").

33. Nor can Gonka be individually liable for retaliation under FEHA. *Jones,* 42 Cal. 4th at 1173 ("nonemployer individuals are not personally liable for their role in that retaliation."); *Moss v. PG&E Corp*., 2009 Cal. Super. LEXIS 2946,

-12-

*19-20 (individual supervisors could not be individually liable for retaliation because the California Supreme Court "held unequivocally that non-employer individuals may not be held personally liable under FEHA for retaliation."); *Saylor*, 2013 Cal. Super. LEXIS 2404 at *10 (sustaining demurrer because "a cause of action for retaliation cannot be maintained against individual defendants.").

34. To the extent Plaintiff seeks to avoid this legal barrier and re-characterize the claims against Gonka as retaliation based on the allegations of the Complaint, this argument is unavailing as Gonka cannot be liable for retaliation as a matter of law. *Grobeson v. City of Los Angeles*, 190 Cal.App.4th 778 (2010) (applying *Jones* retroactively and dismissing retaliation claim against a supervisor).

### c. The Lack of Severe or Pervasive Conduct Precludes Personal Liability

35. Plaintiff's harassment claims also fail because the alleged personnel management actions, would not constitute harassment and are not remotely severe or pervasive so as to constitute an abusive and hostile work environment.

36. To state a FEHA claim for harassment, Plaintiff must plead conduct sufficiently severe or pervasive to "alter the conditions of [the plaintiff's] employment and create an abusive work environment," excluding conduct that is "occasional, isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608-609 (1989) "In determining what constitutes 'sufficiently pervasive' harassment, acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 142 (2007).

37. Plaintiff's allegations of personnel management decisions fall far short of meeting the necessary standard. None of the allegations even remotely allege that Gonka engaged in "verbal harassment," "physical harassment," or "visual forms of harassment." Cal. Code Regs. Tit. 2, § 11019, (b)(2). Further, none of the alleged

-13-

acts attributed to Gonka come anywhere near approaching the level of severity or pervasiveness required to constitute harassment.

38.     For example, Plaintiff complains that Gonka assigned him new sales territories, increased his sales quota and gave him a "verbal warning in February 2022 to increase production" after his sales declined.   SAC ¶¶ 35, 37, 42, 43.

39.     Similarly, Plaintiff's allegations of harassment related to obtaining credit for sales (SAC ¶ 33), fails as there is no allegation that others were treated differently. Even if the allegation was repackaged as a harassment allegation, it falls far short of the severe or pervasive standard.  Similarly, Plaintiff's allegation that Gonka "would purposely ignore Plaintiff's requests for communication leaving him with no supervisor to approve deals and sales that Plaintiff was counting on to meet his sales quotas"  falls far short of the required severe or pervasive standard.  SAC ¶ 34.

40.     Moreover, the 2017 harassment claim against Gonka is outside of the applicable statute of limitations, and none of the later alleged acts attributed to Gonka can form the basis of a valid harassment claim as a matter of law.  Because there is a no timely allegation of harassment against Gonka, there is no colorable ground supporting the sole cause of action against Gonka.   Therefore, Gonka has been fraudulently joined.  Consequently, the citizenship of Gonka should be disregarded for the purpose of establishing diversity jurisdiction upon removal.

### d.     Plaintiff Fails to State a Claim of IIED

41.     Similarly, Plaintiff fails to state a claim of IIED or NIED against Gonka within the two-year statute of limitations—or within any period.  Again, Gonka has been fraudulently joined and his citizenship should be disregarded.

42.     Plaintiff's Seventeenth Cause of Action for IIED against both Defendants is similarly devoid of facts.  Plaintiff must plead: (1) Defendants' conduct was outrageous; (2) Defendants' intended to cause or recklessly disregarded the probability of causing emotional distress; (3) Plaintiff suffered severe or extreme emotional distress; and (4) the actual and proximate causation of the emotional

-14-

distress by the Defendants' outrageous conduct. *Yau v. Allen*, 229 Cal. App. 4th 144, 160 (2014). "Outrageous," conduct "must be so extreme as to exceed all bounds that are usually tolerated in a civilized community." *Id.*

43. Plaintiff's claims for intentional and negligent infliction of emotional distress against Gonka are based on the same allegations of harassment. SAC at ¶¶ 227-236. The statute of limitations for IIED claims is two years. Cal. Code Civ. Proc. § 335.1; *Wassmann v. South Orange County Comm. College Dist.*, 24 Cal. App. 5th 825, 853 (2018) ("A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct.") Plaintiff's alleged harassment, Gonka's "inappropriate touching and sexual comments," occurred in 2017. SAC at ¶ 25; Rafter Decl. ¶ 9, Exhibit J (Plaintiff's deposition testimony).

44. Any conduct Plaintiff claims occurred within the two-year time frame do not amount to "outrageous conduct" necessary to support an IIED claim. To plead "outrageous conduct," Plaintiff must allege more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, but rather Plaintiff must plead "*with great specificity*, the acts which he or she believes are *so extreme* as to exceed all bounds that are usually tolerated in a civilized society." *Yau*, 229 Cal. App. 4th at 161 (emphasis added); *Fisher*, 214 Cal. App. 3d at 617. Plaintiff's claims fall far from the "extreme" and "outrageous," being "openly rude and hostile to Plaintiff in front of other co-workers," (SAC ¶ 32); requiring Plaintiff to submit serial numbers (*id.* ¶ 33); "give Plaintiff a new territory, letting him build it up for a year or two and then take it away from him," increasing quotas, be "non-responsive to his inquiries" and scheduling but not attending meetings (*id.* ¶ 35, 37); "purposely ignore Plaintiff's requests for communication," (*id.* ¶ 34); not approving an offer of 0% financing to a client (*id.* ¶ 39); giving Plaintiff the Texas region, increasing his quota by $100,000, specifying his accounts and giving Plaintiff a verbal warning in February 2022 to increase production (*id.* ¶ 42); chastising Plaintiff for his interactions with a customer

-15-

(*id.* ¶¶ 49-50.) Even assuming these combined allegations are true, these acts do not amount to insults, indignities and petty oppressions, let alone conduct so extreme as to exceed all bounds tolerated in a civilized society. *Yau*, 229 Cal. App. 4th at 161 (emphasis added); *Fisher,* 214 Cal. App. 3d at 618 (dismissing IIED claim where plaintiff physician only pled "indignities" such as that the company canceled the physician's lease in retaliation for his FEHA complaint and allowed another doctor to refuse to examine his patients.)

45.    Additionally, Plaintiff's IIED claim would be barred by the workers' compensation exclusivity rule. "Severe emotional distress arising from 'outrageous conduct' that occurred at the worksite, in the normal course of the employer-employee relationship is the type of injury that falls within the exclusive province of workers' compensation." *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 902 (2008); *Cole v. Fair Oaks Fire Protection Dist*., 43 Cal. 3d 148, 160 (1987) ("[M]isconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment or intended to cause emotional disturbance resulting in disability.") *This is so even if the misconduct could be characterized as "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance." Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 366 (2010) (workers' compensation exclusivity rule barred IIED claim where employer "berated and humiliated [plaintiff], criticized his job performance, and insulted him with profanities on a regular basis").

46.    Here, the allegations of Gonka's "rude" and "unprofessional manner," expanding Plaintiff's territories and increasing or decreasing his quotas, and issuing him verbal warnings are all conduct that occurred at the worksite, and amount to

-16-

personnel decisions within the normal course of the employer-employee relationship. Any claimed injury falls within the exclusive purview of workers' compensation.

47.     Plaintiff's conclusory IIED allegations fail to plead facts demonstrating severe emotional distress.   Plaintiff merely makes boilerplate assertions that Defendants "acted with reckless disregard of the probability of causing emotional distress," without pleading facts showing such reckless disregard, and claiming in a conclusory fashion that Plaintiff suffered severe emotional distress. SAC ¶¶ 227-232. Regurgitation of the legal elements of a claim do not constitute facts sufficient to withstand a demurrer. Significantly, in order to sufficiently plead the "severe emotional distress" element, Plaintiff must plead facts demonstrating "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should expect to endure it." *Bock v. Hansen*, 225 Cal. App. 4th 215, 233 (2014). Here, Plaintiff pleads "shame, humiliation, embarrassment, anger, chagrin, disappointment, and anxiety," which, assuming this allegation as true, such emotions alone do not amount to the standard of "substantial" or one that a reasonable person, should expect to endure. *Hughes,* 46 Cal. 4th at 1050-1051 ("discomfort, worry, anxiety, upset stomach, concern and agitation" were insufficient.)

### e.     Plaintiff Fails to State a Claim of NIED

48.     A NIED claim is not an independent tort.  6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195; *Worsham v. Yshre*, 2022 Cal. Super. LEXIS 27547, *15 (sustaining demurrer because "negligent causing of emotional distress is not an independent tort." *Woods v. Ronila*, 2021 Cal. Super. LEXIS 92250, *4-5 (same). To plead NIED, plaintiff must establish negligence. *Marlene F. v. Affiliated Psych. Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) ("The traditional elements of duty, breach of duty, causation, and damages apply.")  Plaintiff does not plead a negligence cause of action nor facts demonstrating the elements of negligence.

49.     Furthermore, Plaintiff fails to plead the requisite "severe emotional distress" beyond vague allegations of "humiliation, mental anguish and

-17-

embarrassment, as well as the manifestation of physical symptoms" which do not meet the "severe" standard.   SAC ¶ 236; *Hughes,* 46 Cal. 4th at 1050-1051; *Pollastrini v. Crivelli,* 2022 Cal. Super. LEXIS 4075 at *7.

50.   Plaintiff's NIED claim is also time-barred by the two-year statute of limitations as it rests on allegations well outside of this timeframe - that CSA allowed for the harassment to happen in 2017 and failed to investigate Plaintiff's claims at that time. SAC ¶¶ 25-26, Cal. Code Civ. Proc. § 335.1.

51.   Notably, Plaintiff did not amend his IIED and NIED causes of action with his SAC, despite the fact that the State Court sustained the demurrer on these two causes of action when ruling on Defendants' Demurrer to the FAC.  Compare FAC to SAC, Rafter Decl. Exhibits F and H.

### 6.   Non-Resident Defendant CSA Satisfies All Requirements to Remove this Case on Diversity Grounds

52.   The only proper defendant in this case is CSA.  As stated above, Plaintiff is a citizen of the State of California.  SAC. ¶¶ 6-7; Coleman Decl. ¶¶ 6-8.  CSA was, and is, a citizen of the State of New York.  Coleman Decl.  ¶ 4.  Complete diversity exists with respect to Plaintiff's claims against CSA. *See* 28 U.S.C. § 1332(a)(1).  As such, this is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and may be removed by CSA pursuant to 28 U.S.C. Section 1441.

## II.   PLAINTIFF SEEKS DAMAGES IN EXCESS OF $75,000

53.   The SAC omitted direct references to the amount in controversy. However, Plaintiff seeks compensatory damages, "including, without limitation, lost wages, earnings, benefits, and other compensation, according to proof, as well as damages for emotional distress and pain and suffering, according to proof as allowed by law," equitable relief, punitive damages, prejudgment and post-judgment interest, attorney fees, statutory fees and/or penalties, and costs of suit.  SAC Prayer for Relief ¶¶ 1-9; *see also* SAC, ¶¶ 57, 69, 70, 83, 84, 93, 94, 110, 111, 126, 127, 138, 139, 147, 148, 160, 161, 172, 174.

-18-

54. Where a complaint filed in state court is unclear as to the amount in controversy, a removing party need only show that it is "more likely than not" that the amount exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Although Plaintiff did not specify the amount in controversy in his Complaint, its' allegations (vigorously contested by Defendant) together with the relief sought by Plaintiff demonstrate it is more likely than not that the amount in controversy sought by this Complaint exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a) This is based on the following:

### A. Lost Wages and Benefits

55. Here, Plaintiff seeks economic damages in excess of $75,000. Plaintiff's Complaint alleges that his employment was terminated as a result of alleged violations of "FEHA", including harassment, retaliation, failure to accommodate and engage in the interactive process, failure to prevent discrimination and retaliation and retaliation for requesting CFRA leave. Plaintiff also brings causes of action for the alleged violation of the California Family Rights Act ("CFRA"), stating that the Defendant discriminated and retaliated against him based on his exercise of, and otherwise interfered with, his CFRA rights. SAC ¶ 150-163. Plaintiff also seeks compensatory damages including loss of income and benefits in an amount according to proof. *See* SAC ¶¶ 69, 83, 93, 110, 126, 138, 147, 160, 172.

56. Both the FEHA and CFRA authorize lost wages as damages. *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, (2007) ("Under FEHA, an employee . . . may be compensated for a future loss of earnings."); *Lavin v. United Techs. Corp.*, No. 2:13-cv-09384, 2015 U.S. Dist. LEXIS 24252, at *59 (C.D. Cal. Feb. 23, 2015) ("Because the CFRA is part of the [statutory scheme under] FEHA . . ., the remedies available for its violation are the same as for other FEHA violations.")(*internal citations omitted*). The Ninth Circuit has clarified that for purposes of determining the amount in controversy, "[i]f a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those

wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Accordingly, where the complaint at the time of removal claims wrongful termination resulting in lost future wages, future wages are included in the amount in controversy. *Id.* at 418.

57. For purposes of considering Plaintiff's alleged damages, Plaintiff's annual base pay in 2022 prior to his termination was greater than $80,230.00 per year. *See* Coleman Decl. ¶ 8, 11. Plaintiff also received an auto allowance, commissions, awards and bonuses which in 2021, exceeded $38,500.00, for a total of over $117,500 in compensation in 2021. *Id*. at ¶ 11-14. CSA's records reflect that Plaintiff's employment was terminated on July 13, 2022. *Id.* at ¶ 7, 11. A conservative estimate of Plaintiff's alleged damages considers the amount of alleged lost wages until the trial date. *See Zambrano v. Rite Aid Corp.*, No. CV 18-9227-MWF, 2019 U.S. Dist. LEXIS 57644, *9 (C.D. Cal. Apr. 3, 2019). Plaintiff earned over $7,000.00 per month based on his base salary and auto allowance alone. *Id.* at ¶ 14. The trial date has not been set but even as of the date of this Removal, there are over 14 months from the alleged wrongful termination on July 13, 2022 to September 14, 2023. Plaintiff's alleged lost wages over 14 months total **$98,000** in base salary and auto allowance alone. Coleman Decl. ¶ 11, 13, 14. As of today, the potential back pay damages alone which Plaintiff claims exceed the jurisdictional minimum.

**B.    Emotional Distress Damages**

58. Plaintiff also alleges IIED and NIED, and seeks damages including, "humiliation, emotional distress, shame, embarrassment and mental pain and anguish," which are authorized under FEHA and CFRA. SAC, ¶¶ 70, 84, 94, 111, 127, 161, 174, 231, 236 and Prayer; *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal. 3d 211, 215 (1982) (emotional distress damages recoverable under FEHA statutory scheme). These emotional distress damages are included in the amount in controversy. *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034

-20-

(N.D. Cal. 2002). Emotional distress damages can be considered when calculating the amount in controversy, even when the amount is vague in the pleadings. *See Jackson v. Ceva Logistics*, 2020 U.S. Dist. LEXIS 72727, *25 (N.D. Cal. Apr. 24, 2020) (J. L.H.K.); *Rodriguez v. Home Depot, U.S.A., Inc.*, 2016 U.S. Dist. LEXIS 94176, *13 (N.D. Cal. July 19, 2016) (C.M.J. J.C.S.).

59.    Plaintiff also is seeking damages for emotional distress and Courts in this district have found that $25,000 is a reasonable *minimum* estimate of the amount in controversy for similar types of discrimination actions. *See Canales v. Performance Food Grp., Inc*., No. CV 17-7464, 2017 U.S. Dist. LEXIS 197363, at *11-12 (C.D. Cal. Nov. 30, 2017) (Plaintiff could obtain emotional distress damages of at least $25,000); *Castillo v. ABM Indus*., No. 5:17-cv-01889, 2017 U.S. Dist. LEXIS 192939, at *11 (C.D. Cal. Nov. 20, 2017) ($25,000 is a conservative estimate of non-economic damages in a disability discrimination case). The emotional distress damage Plaintiff seeks provide additional support that the jurisdictional amount is more than satisfied when combined with the other measures of damages sought

## C.    Attorney's Fees

60.    If attorney fees are recoverable by plaintiff by statute, the fee claim is included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1155-56 (9th Cir. 1998). The measure of fees is that which accrues until the action is resolved. *Simmons v. PCR Technology,* 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002).

61.    Here, Plaintiff seeks attorneys' fees, at least in part, pursuant to the terms of FEHA and the CFRA, which form the basis of seven of his sixteen causes of action. *See* SAC. In *Simmons* the court reasoned, "[a]lthough attorneys' fees cannot be precisely calculated, maintaining a [ ] discrimination claim will undoubtedly require substantial effort from counsel." *Id*. at 1035.

## D.    Statutory Penalties

62.    Plaintiff seeks various statutory penalties under the Labor Code. See

-21-

SAC ¶¶ 24, 208, 213, 216, 217, 219, Prayer for Relief ¶ 7.

63. **Waiting Time Penalties:** Under his Fourteenth Cause of Action, Plaintiff seeks penalties for not paying Plaintiff all wages earned at the time of his termination. *See* SAC, ¶¶ 206-213. Although CSA disagrees that he is entitled to waiting time penalties, at his base rate of $308.57/day, there is reasonable support in the Complaint that Plaintiff put $9,257.00 ($308.57 per day x 30 days) in controversy for waiting time penalties." *See* Coleman Decl., ¶¶ 11, 15; *see also* Cal. Lab. Code § 203(a). Because Plaintiff's employment terminated on July 13, 2022, and he alleges that he was not paid all wages due at the time of his termination, it is reasonable for CSA to rely upon the statutory maximum of 30 days' pay, or **$9,257.00** in base pay alone. *See Adkins*, 293 F. Supp. 3d at 1146; *see* Coleman Decl., ¶¶ 11, 15.

64. **Additional Penalties**: Plaintiff additionally seeks penalties for:

- Failure to Pay Overtime Wages (the statutory penalty for California Labor Code ("Labor Code") § 1194 violations is $50.00 for the first pay period and $100 for each subsequent pay period.  Cal. Lab. Code § 558);

- Failure to Provide Meal Periods and Authorize and Permit Rest Periods (the statutory penalty for California Labor Code § 226.7 violations is one additional hour of pay at the employee′s regular rate of compensation for each workday that the meal or rest period is not provided. Cal. Lab. Code § 226.7(b));  and

- Failure to Provide Adequate Pay Stubs in Violation of Labor Code Section 226 (the statutory penalty for wage statement violations is $50 for the first pay period and $100 for each subsequent pay period, up to a total maximum penalty of $4,000. Cal. Lab. Code § 226(e)).

65. Thus, the claimed penalties provide additional support that the jurisdictional amount is more than satisfied when combined with the other damages.

E. **Punitive Damages**

66. If available under applicable law, punitive damages are considered in determining the amount in controversy. *Conrad Associates v. Hartford Accident &*

-22-

*Indemnity Co.*, 994 F. Supp. 1196, 1198-99 (N.D. Cal. 1998); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995).  Punitive damages are available for violations of FEHA and CFRA, as well as for wrongful termination.  *Andrade v. Arby's Rest. Group, Inc.*, 225 F. Supp. 3d 1115, 1143 (N.D. Cal. 2016); *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 176 (1980).  Here, Plaintiff seeks punitive damages in ten of his causes of action.  *See* SAC ¶¶ 71, 85, 95, 112, 128, 139, 149, 162, 173, 232.

67.   Although the facts here will ultimately demonstrate that Plaintiff is not entitled to punitive damages; "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 648 (9th Cir. 2012).  For purposes of assessing the amount in controversy, Plaintiff "could receive punitive and emotional distress damages that, standing alone, could meet the $75,000 jurisdictional minimum." *See Stainbrook v. Target Corp.*, 2016 U.S. Dist. LEXIS 74833, at *12.

68.   CSA vigorously denies each of Plaintiff's claims and factual allegations; however, the damages that Plaintiff seeks in his Complaint makes clear that the amount in controversy that Plaintiff seeks is far greater than $75,000.  *See e.g. Simmons v. PCR Technology*, 209 F. Supp. 2d at 1031-1035 (Where plaintiff's wage loss alone would have exceeded $56,000 by trial, coupled with punitive damages and attorneys' fees, the court found that "the jurisdictional minimum was clearly satisfied.").  ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold") *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014.)

## III.   DEFENDANT CSA HAS SATISFIED ALL REQUIREMENTS TO REMOVE THIS CASE ON DIVERSITY GROUNDS

69.   Plaintiff is a citizen of California; CSA is a citizen of New York. Individual Gonka is fraudulently joined and his citizenship must therefore be

-23-

disregarded. Accordingly, complete diversity exists under 28 U.S.C. § 1332(a).

70.    Because complete diversity exists between Plaintiff and CSA, and because the amount in controversy exceeds $75,000, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1441(a), Defendant may remove this action to this Court.

71.    Fraudulently joined and unserved parties such as Gonka need not join in or consent to the removal of the action.  *See* 28 U.S.C.S. § 1446 (b)(2)(A)-(C); *Emrich v. Touche Ross & Co*., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

72.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b)(3), which provides "Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Here, the Complaint was filed on September 15, 2022.  It was served on CSA on September 28, 2022, and Defendants filed a timely original Notice of Removal on October 28, 2022.  Further, Plaintiff provided deposition testimony regarding his harassment claim on August 29, 2023.  Defendants received Volume I of Plaintiff's deposition transcript on September 1, 2023, when Defendants were able to ascertain that the case became removable.  Rafter Decl. ¶ 9, Exhibit J.  Thus, the deadline to file the instant Notice of Removal would be October 1, 2023.

73.    "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 [28 USCS § 1332] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  This Notice of Removal is timely as it is filed within 30 days of Plaintiff's deposition testimony *and* within one year of Plaintiff's commencement of this action on September 15, 2022.  Rafter Decl. ¶ 9, Exhibits A, J.

-24-

74. Though this Court previously remanded the action, there has been a "relevant change of circumstances" since then in that Plaintiff has now admitted that: (a) all alleged acts of harassment occurred outside the statute of limitations period and (b) Plaintiff's allegation that the harassment "continued" was based on one act of touching in June 2022 when Gonka touched Plaintiff's shoulder for "one second" during a team training event before removing his hand. This information was not previously known or available at the prior removal and this removal is therefore proper. *Carson Cogeneration Co. v. Scottsdale Ins. Co.*, 2020 U.S. Dist. LEXIS 28155, at *5-6 (successive removal proper where defendant relied on new information to establish plaintiff's citizenship that was not previously available before it received plaintiff's discovery responses); *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015) ("A successive removal petition is only permitted upon a 'relevant change of circumstances'-that is, 'when subsequent pleadings or events reveal a new and different ground for removal.'");

75. Removal to this Court is proper pursuant to 28 U.S.C. § 1441(a) and § 1391(a) because the State Court Action was filed within this District and this is the judicial district in which the action arose. *See* 28 U.S.C. § 84.

76. Pursuant to 28 U.S.C. § 1446(d), written notice of this Notice of Removal is being provided to all parties, and is being filed with the Clerk of the Superior Court of the State of California for the County of Orange. The proof of service of this Notice of Removal to all adverse parties will be filed with this Court.

77. By this Notice of Removal, CSA does not waive any objections to defects in process or service of process, jurisdiction, venue, or any other defense.

DATED: September 14, 2023          DORSEY & WHITNEY LLP


By  /s/ *Pavlina K. Rafter*
Pavlina K. Rafter
*Attorneys for Defendant*
Canon Solutions America, Inc.

-25-

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 Anton Boulevard, Suite 2000, Costa Mesa, CA 92626-7655. On September 14, 2023, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED:   **NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)**
**[28 U.S.C. §§ 1332 AND 1441(b)]**

SERVED UPON:   Andranik Tsarukyan
Armen Zenjiryan
Patricia Lynne Mitchell
REMEDY LAW GROUP LLP
610 East Providencia Avenue, Unit B
Burbank, CA 91501
Tel: (818) 632-4730
Andy@remedylawgroup.com
Armen@remedylawgroup.com
Patti@remedylawgroup.com

☒   (BY ELECTRONIC MAIL) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused a copy of the document(s) to be sent from email massure.rayson.kim@dorsey.com to the persons at the e-mail addresses listed in the Service List.

☒   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on September 14, 2023, at Costa Mesa, California.

_____
Kim Massure-Rayson

-1-

PROOF OF SERVICE